UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| REGINALD HARRIS | : |
| | :     PRISONER |
| v. | :     Case No. 3:03 CV 821 (JGM) |
| | : |
| JOHN ARMSTRONG, et al. | : |

## RULING ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Reginald Harris ["Harris"], commenced this action in May 2003 seeking compensation for lost items of personal property. (Dkt. #3) On July 27, 2005, the parties consented to jurisdiction before this U.S. Magistrate Judge. (Dkt. #19). Harris has filed two motions for summary judgment. The motions, which are identical, were filed October 25, 2005 and April 25, 2006. (Dkts. ##21 & 29). Defendants were afforded an extension of time, until March 28, 2006, to respond to the first motion. (Dkts. ##24-25). Although defendants have not responded to either motion, the Court concludes that Harris has not shown that he is entitled to judgment as a matter of law. Accordingly, Harris' motions are denied.

I.     Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no genuine issue as to any material fact. . . ." Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993)(internal quotations & citation omitted). The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, NY, 375 F.3d 206, 219 (2d Cir. 2004)(multiple citations omitted).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)(citation omitted), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)(citation omitted).

II.   Facts[1]

Harris has been transferred among various correctional institutions.  On several occasions, he was transferred under emergency conditions and his personal property was not transferred with him.  On March 20, 1999, Harris was transferred from MacDougall Correctional Institution ["MacDougall"] to Osborn.  (Plaintiff' Statements, ¶ 1).  His nylon underwear, black nylon sweatsuit, prayer beads, shoes, sneakers, boots, AM/FM radio and cassette player, prayer scarf and calculator did not arrive at the new facility.  (Plaintiff's Statements, Exh. A).  While trying to resolve this matter, Harris was transferred to Northern Correctional Institution ["Northern"].  (Plaintiff's Statements, ¶ 1).

---

[1]The facts are taken from Harris' Local Rule 56(a)1 Statements ["Plaintiff's Statements"](Dkts. ##21-1, 29-1).

These items as well as did not arrive at Northern. (Plaintiff's Statements ¶ 1 & Exh. A).

While at Northern, Harris' paintings and art supplies were lost; several of Harris' original paintings were being stored behind the door of the property room because they were too large to fit on the shelves. (Plaintiff's Statements ¶ 2 & Exh. B). The remainder of the items were in the property room because Harris was not permitted to have these items at Northern; when Harris left Northern, he also realized that his recently purchased hot pot was missing. (Plaintiff's Statements ¶¶ 2-3 & Exhs. B-C; see also Dkt. #21-1,Brief at 2).

In June 2001, while confined at Garner Correctional Institution, Harris received various art supplies and his AM/FM radio and cassette player; these items were held in the property room because the items had not been authorized by the facility. (Plaintiff's Statements ¶ 4 & Exh. D). When Harris was transferred to MacDougall, the items were not included in his personal property. (Id.).

When he reported the losses, Harris was told to file a claim for lost property with the Connecticut Claims Commissioner. (Plaintiff's Statements, Exh. E).

III.   Discussion

Harris argues that judgment should enter in his favor because he has alleged that defendant was responsible for his personal property and the property was lost. The Court concludes, however that Harris has misinterpreted the applicable law.

The Supreme Court has found that the Due Process Clause is not violated where a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers, if the state provides an adequate post-deprivation

3

compensatory remedy. See Hudson v. Palmer, 468 U.S. 517, 531 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation Harris describes. See CONN. GEN. STAT. § 4-141 et seq. (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission). This state remedy is not rendered inadequate simply because Harris anticipates a more favorable remedy under the federal system or it may take a longer time under the state system before his case is resolved. See Hudson, 468 U.S. at 535. Thus, to state a claim cognizable in federal court, Harris must show that he has been denied due process of law, i.e., that he was denied an opportunity to attempt to redress this alleged wrong through legal procedures. See Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 473 (S.D.N.Y. 1998) (where state law provides adequate remedy, claims for loss of personal property not cognizable under section 1983); see also Hiramramzdn v. Haskins, No. 3:03 CV1897 (JBA)(D. Conn. July 12, 2004)(dismissing sua sponte Fourteenth Amendment due process claim because prisoner-plaintiff had presented claims to Connecticut Claims Commission). In addition, Harris must show more than that the correctional staff acted negligently with regard to the loss of his personal property. See Daniels v. Williams, 474 U.S. 327, 330-36 (1986)(mere negligence on part of state official cannot work a constitutional deprivation of property).

Harris alleges that he submitted claims to the Connecticut Claims Commission. He alleges that the "Claim Commissioner refused to acknowledge [or] process the claims with an excuse of financial problems of one sort or another." (Complaint ¶ 4.a).

Harris attaches a letter from the Office of the Claims Commissioner stating that all claims must be filed in duplicate and a letter from Harris to the Claims Commissioner regarding some confusion about Harris' eligibility to proceed without payment of filing fees. (Plaintiff's Statement, Exh. A). This information, however, does not demonstrate that Harris was unable to pursue his claims once the financial issue was resolved and the correct paperwork submitted. Thus, Harris fails to demonstrate, as a matter of law, that the Office of the Claims Commission is not an adequate state post-deprivation remedy and that he has been deprived of due process of law.

In addition, the Court notes that the only defendant is former Commissioner of Correction John Armstrong. Harris alleges that defendant Armstrong was responsible for keeping his property safe (see Complaint ¶ 3), but provides no evidence that defendant Armstrong was even aware of the property loss.

To state a claim for damages, Harris must demonstrate the personal involvement of the defendant. Defendant Armstrong is a supervisory official. "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002)(citation omitted). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)(multiple citations omitted); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000)("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events

through links in the chain of command.")(internal quotations & citation omitted)(emphasis in original). As the Second Circuit explained in Leonard:

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

282 F.3d at 140 (citations & footnote omitted).

Because Harris alleges no fact demonstrating the personal involvement of defendant Armstrong, he fails to demonstrate that he is entitled to judgment as a matter of law on any claim for damages.

Harris has not presented evidence showing that he is entitled to judgment as a matter of law on his claim of lost property. Accordingly, Harris' motions for summary judgment are denied.

In addition, Harris has filed a motion for default judgment on the ground that defendant Armstrong failed to timely respond to his first motion for summary judgment. (Dkt. #28). The Federal Rules of Civil Procedure contemplate two steps in the entry of a default judgment. First, the court clerk is expected to enter default against the defendant pursuant to Rule 55(a). Second, either the clerk or the court enters the default judgment pursuant to Rule 55(b). See Hirsch v. Innovation Int'l, Inc., No. 91 Civ. 4130(MJL), 1992 WL 316143, at *1 (S.D.N.Y. Oct.19, 1992). The Court has not entered default against defendant Armstrong. While this process is not mandatory, the Court declines to depart from it here. Harris' motion for default judgment is denied

without prejudice as premature.

IV.     Conclusion

Harris' motions for summary judgment (**Dkts. ##21 & 29**) are **DENIED**. His motion for default judgment (**Dkt. #28**) is **DENIED** without prejudice as premature.

Any other dispositive motions must be filed on or before **October 6, 2006**. If no motions have been received for that date, the case will be scheduled for trial.

This is **not** a recommended ruling. The parties consented to proceed before a United States Magistrate Judge (Dkt. #19) and on July 27, 2005, the case was transferred to the undersigned for all purposes, including the entry of judgment.

**SO ORDERED** this 14th day of August, 2006, at New Haven, Connecticut.

_____
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

7